Upson, J.
— The first question to be decided in this case is, whether, under the statute then in force, the defendant was justified in demanding from the plaintiff the sum of twenty-five cents, as the fare from Huntsville to Bellefontaine, the distance being conceded to be more than six, and less than eight miles. Upon this ]foint the court of common pleas charged the jury that the “ defendant had the right to charge any rate not exceeding twenty-five cents for a distance less than eight miles and more than six miles,” to which charge the plaintiff excepted. The words of the statute, in force on June 8, 18T5, are; “ Any corporation operating a railroad in whole, or in part, in this state, may demand and receive for the transportation of passengers on said road, not exceeding three cents per mile for a distance of more than eight miles; provided the fare shall always be made that multiple of five nearest reached by multiplying the rate by the distance.” T2 Ohio Laws, 143; Revised Statutes, § 33T4. It will be observed that while the statute limits the fare which may be demanded when the distance is more than eight miles, it imposes no limit when the distance is not more than that. In that case the railroad company is allowed to exercise its own discretion in fixing the rate, subject only to the implied condition that it must not prescribe a rate which the law would pronounce unreasonable. In giving a construction to that }3art of the same statute which provides, that for the transportation of property, the corporation may demand and receive, “ in case the same is transported a less distance than thirty miles, such *452 reasonable rate as may be from time to time fixed by such corporation, or prescribed by law,” this court held that it was unreasonable, as a matter of law, that the company should fix a greater sum for a less distance than thirty miles, than the maximum allowed for full thirty miles. Campbell v. Cincinnati & Marietta Railroad Company, 23 Ohio St. 168. And similar language in section 12 of the act of February 11, 1848 (S. & C. 271), relating to rates for carrying passengers, received the same construction in the case of Smith v. Pittsburgh, Fort Wayne & Chicago R. R. Co., 23 Ohio St. 10.
The amount demanded in this case did not exceed the maximum allowed by the rule approved in those eases. In the arguments of counsel there is much discussion as to the meaning of .the proviso, that “ the fare shall always be that multiple of five nearest reached by multiplying the rate by the distance,” the court instructing the jury that this proviso “ requires that the .multiple which is equal or next above the product thus reached, shall govern, and not the multiple short of, or below such product,” which the defendant claimed to be the proper construction. The plaintiff contending that the multiple nearest reached is the nearest multiple of five, whether above or below such product.
It is not material in this case, however, whether the construction given to the proviso by the court of common pleas is the .correct one or not; for it is clear that for any distance greater than eight miles the railroad company might charge at least twenty-five cents, and we are of opinion that for a distance not more than eight miles, any reasonable sum not exceeding that might be charged. There was in that respect no error in the charge of the court of common pleas.
It is next contended that the court of common pleas erred in charging the jury that “ the railroad company had the right to prescribe rates for pre-purchased tickets, and car rates when tickets were not pre-purchased, for distances less than eight miles and more than six miles, provided that neither of such rates exceeded twenty-five cents.”
It is insisted that “ when a railroad company fixes a ticket , rate, there is no authority to charge a higher car rate, and the *453 court will, as a question of law, hold that the ticket rate is. a reasonable rate,” and that a higher car rate is unreasonable. We cannot assent to that proposition. The company cannot impose as a penalty for not purchasing a ticket such a sum that the fare demanded on the cars, including such additional amount, shall exceed the maximum allowed by law; but within that limit a just discrimination is clearly proper. The first duty of the conductor is to provide for the safety of the passengers on the train of which he has charge, and next to promote their comfort and convenience. lie also has the general supervision and control of those who are employed on the train. It is plain that the practice of paying fare on the train, instead of purchasing tickets, might be carried so far as to prevent the faithful performance of the conductor’s duties, and when that is found to be the case, railroad companies not only have the right to make, but often do make and enforce, rules to prevent any persons from going upon their trains without having previously purchased tickets. The small additional sum required in this case when the fare was paid on the cars was certainly reasonable, and it was not error to so charge the jury.
The plaintiff also excepted to the charge of the court of common pleas, that when payment of the fare demanded was refused, the defendant had the right to eject him from its train, and also to the refusal of the court to charge, as requested by the plaintiff, that “ the defendant railroad company had no right to expel the plaintiff from its cars, except at a railroad depot, or stopping-place.” Of the defendant’s right to eject the plaintiff from its car for a persistent refusal to pay his fare from the station at which ho entered the ear to the next station, there can be no serious question, provided he was not removed with unreasonable violence, or at a place where he would be exposed to serious injury or danger. When he refused to pay the usual fare, he had no right to remain on the train, or to claim the lights of a passenger, but might rightfully be treated as a trespasser, and be at once expelled. To hold that this could only be done at a railroad depot, or stopping-place, would deprive a railroad company of its chief safeguard against that kind of fraud or imposition, and we know *454 of no principle of law, or public policy, which requires that every one who prefers not to pay his fare shall be carried without charge from the station at which he gets on the train to the next station.
We see no error in the charge of the court of common pleas, that “ when, for such refusal to pay, the train was stopped for the purpose of ejecting the plaintiff, his right to transportation was not restored by afterward offering to pay the fare so demanded,” especially when taken in connection with the instruction also given to the jury, that the plaintiff was entitled to a reasonable time, after the demand was made, to consider whether he would pay the sum demanded. To concede that privilege to a person who has willfully violated the obligations of the implied contract under which he was allowed to enter the cars, would enable him to attempt the perpetration ofa fraud at the leastpossible risk of loss or inconvenience to himself, and the greatest annoyance and inconvenience to the railroad company, and the passengers on its train. By denying such privilege no right is violated, for the rights and privileges of a passenger have been abandoned, under circumstances which justify the company in refusing to permit such person to come again upon the train.
Considering the entire charge given to the jury, and the instructions refused, we are of opinion that there was no error in the rulings of the court of common pleas, and that the district court erred in reversing the judgment of that court.
Judgment of the district court ■ reversed, and judgment of the court of common pleas affirmed.